**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Unknown Party,

Plaintiff,

v.

Shaila Patel, et al.,

Defendants.

No. CV-23-00581-TUC-AMM

**ORDER**

Pending before the Court is Defendants Shaila Patel, Bharatkumar Patel, and Krushna LLC's Motion for Summary Judgment.[1] (Doc. 70.) Defendants move for summary judgment in this Trafficking Victims Protection Reauthorization Act ("TVPRA") case asserting Plaintiff, who alleges she was sex trafficked at the Defendants' No-Tel Motel in Tucson, Arizona, has failed to establish a triable issue as to either perpetrator or beneficiary liability under the TVPRA. The motion is fully briefed. (Docs. 70–71, 77–78, 88.) For the following reasons, the Court will grant Defendants' Motion for Summary Judgment.[2]

---

[1] Neither party requested oral argument. (Docs. 70–71, 77–78, 88.) While the Court initially set this matter for oral argument, it later vacated the hearing in its discretion upon concluding that oral argument would not aid in its decision-making process. (Doc. 96 (citing *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); Fed. R. Civ. P. 78(a); LRCiv 7.2(f)).)

[2] Also pending are Defendants' Motion to Exclude Plaintiff's Expert Noel Busch-Armendariz, PhD, LMSW, MPA (Doc. 66), Motion to Exclude Plaintiff's Expert Rochelle Keyhan (Doc. 67), Motion to Exclude Salvatore Caccavale (Doc. 68), and Motion to Exclude Heidi Chance (Doc. 69). These matters have been fully briefed. (Docs. 66–69, 79–

## I. Background

On December 31, 2023, Plaintiff Jane Doe T.B.B. filed a Complaint under the TVPRA alleging that she was sex trafficked from 2003 to 2014 at the No-Tel Motel, which was owned and operated by Defendants Shaila Patel and Bharatkumar Patel (individually "Mrs. Patel" and "Mr. Patel" and collectively "the Patels"). (Doc. 1.)

On October 17, 2024, Plaintiff filed an Amended Complaint. (Doc. 22.) Plaintiff included Defendant Krushna LLC, a company owned in part by the Patels.[3] (*Id.* at 3.) The Amended Complaint alleges that the Patels and Krushna LLC are liable under both the perpetrator and beneficiary provisions of the TVPRA. (*Id.* at 21–23.) Defendants' Motion for Summary Judgment followed. (Doc. 70.)

## II. Relevant Facts

### A. The Patels & No-Tel Motel

In 2002, the Patels immigrated to the United States from India. (Doc. 71 at 1; Doc. 71-1 at 4.) Mr. Patel began working as the manager of the Motel Hacienda on North Oracle Road in Tucson, while Mrs. Patel assisted with cleaning. (Doc. 71 at 1–2.) The Patels worked at the Motel Hacienda for approximately four months and then moved out of state. (*Id.* at 2.) In 2003, they returned to Arizona and purchased the Tiki Motel, also on North Oracle Road. (*Id.*)

In 2007, the Patels formed Krushna LLC with two family members who helped with funds that enabled the Patels to subsequently purchase the No-Tel Motel on September 1, 2007. (*Id.* at 3; Doc. 70 at 10; Doc. 71-1 at 14.) The four members of Krushna LLC split the No-Tel Motel profits equally, although only the Patels owned the property. (Doc. 71 at 3; Doc. 71-1 at 15, 88–98.)

At the time of purchase, the No-Tel Motel was a one-story 17-room establishment on North Oracle Road, located approximately two to three blocks from the Motel Hacienda.

---

82, 84–87.) As discussed below, the Court will deny as moot Defendants' Motions to Exclude to the extent the expert opinions were not relied upon for summary judgment.

[3] The docket does not accurately reflect that Krushna LLC is a Defendant in this case. The Court will direct the Clerk of Court to correct the docket.

(Doc. 71 at 3.) The rooms were exterior facing and individually accessible from the parking lot. (*Id.*) The property was surrounded by a fence, and guests and their vehicles entered the premises through a sliding gate at the street entrance. (*Id.*) Upon entrance, guests had to drive by the registration window to reach the rooms. (*Id.* at 4.)

The Patels thereafter renovated the No-Tel Motel. (*Id.*) This included restoring exterior landscaping, removing carpeting and pre-existing mirrors on the rooms' ceilings, replacing the roof, adding air conditioning, and installing security cameras covering the entrance, front office, and parking lot. (*Id.* at 4–5.) The security cameras did not see all the room doors, but they did show people walking towards the rooms. (Doc. 71-1 at 61.) The Patels do not provide receipts to confirm when these renovations occurred but claim it was "[i]mmediate[.]" (Doc. 71 at 4.) Plaintiff highlights that the Patels cannot establish when they underwent renovations. (Doc. 78 at 5.)

In addition to these repairs, the Patels added Dish Network satellites and subscriptions for each of the rooms. (Doc. 71 at 4.) Before the Patels purchased the No-Tel Motel, the only television channels available to guests were local and pornographic channels. (*Id.*) The Patels ultimately maintained the adult entertainment license from the City of Tucson, but, with the Dish Network subscription, offered additional non-pornographic programming. (*Id.*) Plaintiff testified that the televisions only played pornographic channels during her time at the No-Tel Motel. (Doc. 78 at 5.) However, Plaintiff does not specify if this characterization described the No-Tel Motel after 2007.[4] (*Id.*) Plaintiff further asserts that the Patels only provided receipts showing Dish Network services from 2017 or later. (*Id.* at 21.)

Only adults who produced identification were permitted to rent rooms at the No-Tel Motel. (Doc. 71 at 5.) Plaintiff asserts that "a guest only needed to provide an ID and

---

[4] Plaintiff also asserts that online reviews after 2007 when the Patels purchased the No-Tel Motel describe the property as "dirty" and only showing pornographic television. (Doc. 78 at 5–6.) The online reviews cited, however, are either dated after the events at issue (i.e., after 2014) or do not contain specific dates. (Doc. 78-16 at 1–13.) They do not, therefore, provide information regarding the time period relevant to summary judgment.

money; the owner would accept any ID even if it did not match the person presenting it." (Doc. 78 at 22.)

Under the Patels' ownership, the No-Tel Motel did not rent rooms by the hour, only by the day or the week. (Doc. 71-1 at 59 –60.) Plaintiff asserts, however, that she witnessed rooms rented by the hour. (Doc. 78 at 9.) She does not provide a specific date or time period for these observations. The Patels assert that the No-Tel Motel only accepted cash, credit card, or debit card to rent a room. (Doc. 71 at 6.) Plaintiff asserts that she rented rooms using prepaid debit cards. (Doc. 78 at 22.) The Patels never advertised the No-Tel Motel rates online or monitored online reviews. (Doc. 71 at 7; Doc. 78 at 10.)

The parties dispute to what extent the Patels managed daily operations at the No-Tel Motel. (Doc. 71 at 5; Doc. 78 at 6–7.) Defendants assert that the Patels hired managers to maintain the No-Tel Motel for the entire period from 2007 to 2014 because the Patels continued to live at and manage the Tiki Motel. (Doc. 71 at 5; Doc. 71-1 at 19–20, 51–53.) Several of these managers were husband and wife couples from India. (Doc. 71-1 at 19–20, 51–53.) On the other hand, Plaintiff argues that the Patels were involved in management because Mr. Patel would come regularly to pick up revenues and monitored the No-Tel Motel security cameras "daily." (Doc. 78 at 7; Doc. 71-1 at 60.) Plaintiff further asserts that she "consistently interacted with the same older Indian man, who she believed to be the owner, at the front desk of the No-Tel Motel and observed him sitting outside the property for extended periods watching everyone who came and went." (Doc. 78 at 7.) Plaintiff does not specify when she saw the "older Indian man" nor is there evidence that Plaintiff identified Mr. Patel as that individual. Plaintiff also avers that she "consistently interacted with the same three individuals at the front desk of the No-Tel Motel[:] an older man, his wife, and a younger male." (*Id.* at 22.) Again, she does not identify Mr. or Mrs. Patel as the older man or his wife.

The Patels instructed No-Tel Motel staff to monitor the property and call the police if they saw anything "unusual" on the cameras. (Doc. 71-1 at 22, 54.) The Patels further instructed staff to "tell anyone trespassing on the property to leave immediately" and to

"call the Tucson Police Department if there were any disturbances such as loitering, fighting, or trespassing on the property." (*Id.* at 77.) Mrs. Patel indicated that "[o]n many occasions the manager called [her] or [Mr. Patel] directly, and one of [them] called the police." (*Id.*) They did not specify the reason for calling the police. The Patels did not provide training to their staff specific to human trafficking. (*Id.* at 22, 54, 62–63.)

If a guest had a complaint, the guest communicated directly with the No-Tel Motel managers. (Doc. 71 at 20–21.) There was no formal complaint system. (*Id.*) As far as Mrs. Patel recalls, no complaints were made from 2007 to 2014 relating to "human trafficking, prostitution, pimps, escorts, or commercial sex." (Doc. 71-1 at 20–21.) The No-Tel Motel had a policy to remove unregistered guests, but Mr. Patel did not recall ever having to do so. (Doc. 71-1 at 62.) The Patels and the No-Tel Motel were never investigated by any local, state, or federal government agency regarding violent crime, prostitution, commercial sex, or sex trafficking. (Doc. 71 at 6; Doc. 78 at 10.)

**B. Plaintiff's Involvement in Sex Trafficking**

In 2000, Plaintiff moved to Tucson to live with her older sister. (Doc. 71 at 7.) She was 15 years old at the time. (*Id.*) Through her sister, Plaintiff met a woman named Crystal who lived in the same apartment building. (*Id.*)

In 2003, when Plaintiff was 18 years old, pregnant, and experiencing financial difficulty, Crystal brought her into commercial sex work. (*Id.* at 7.) Plaintiff alleges that Crystal trafficked her continuously from 2003 through 2014 and that another woman, Georgia, intermittently trafficked her between 2004 and 2005 or 2006.[5] (*Id.* at 8.) All trafficking occurred after Plaintiff reached adulthood. (*Id.*)

Plaintiff first observed commercial sex encounters and thereafter began seeing customers for Crystal. (*Id.* at 7.) Plaintiff describes being emotionally coerced into participating after Crystal demanded she do more than watch and asked: "How are you going to get your place? How are you going to take care of your kid?" (Doc. 78 at 11.)

---

[5] For purposes of the Motion for Summary Judgment only, Defendants agree that Plaintiff is a victim of sex trafficking. (Doc. 71 at 1 n.1.)

Plaintiff kept 50 percent of the proceeds she made for Crystal and used that money for her own and her children's living expenses. (Doc. 71 at 7.)

Crystal supplied Plaintiff with Percocet, and Plaintiff asserts she became physically addicted to opioids. (*Id.* at 8.) Plaintiff describes herself as being "routinely high" when she visited the No-Tel Motel. (Doc. 78 at 23.) Plaintiff asserts that Crystal threatened opioid withdrawal to keep her working. (*Id.*) She further asserts that Crystal threatened to disclose Plaintiff's commercial sex work to her romantic partners. (*Id.*) For example, Plaintiff testified that, in 2005, Crystal told the father of Plaintiff's children that Plaintiff was "seeing guys for money," after which he assaulted Plaintiff, causing a skull fracture, hospitalization, and traumatic brain injury. (*Id.*) Plaintiff further testified that her later boyfriend assaulted her in 2012 after Crystal disclosed her commercial sex activity to him. (*Id.*)

During the alleged sex trafficking period, Plaintiff maintained contact with family members and lived at various times with her children, the father of her children, and a subsequent boyfriend. (*Id.*; Doc. 78 at 12.) She also grocery shopped, cooked for her children, took them on outings, and took them to and from school. (Doc. 71 at 8.) In 2012, after Plaintiff's then-boyfriend assaulted her, the Arizona Department of Child Safety removed Plaintiff's children. (Doc. 78 at 12.) Plaintiff also experienced a period of homelessness. (*Id.*)

Plaintiff alleges that she was trafficked at the No-Tel Motel regularly from 2007 through 2014, estimating approximately 150 visits during that period. (*Id.*; Doc. 71 at 9.) She states that the frequency varied with demand and could reach three or four days per week. (Doc. 71 at 9.) Plaintiff did not produce receipts or other documentation for each asserted visit. (*Id.*)

Plaintiff describes mirrors on the ceilings, pornography on the televisions, short stays, expensive vehicles, "well-dressed people, and skimpily clothed girls," and loiterers and drug addicts in the parking lot. (*Id.*) She also recalls that Crystal had up to five other victims working for her at the No-Tel Motel, including a 13-year-old girl. (*Id.*; Doc. 78 at

13.) Plaintiff also asserts that she requested additional towels multiple times per day. (Doc. 78 at 22.) Mr. Patel does not recall any guests asking for an "excessive" amount of towels. (Doc. 71-1 at 65.) Plaintiff further stated that there were "obvious signs left of commercial sex in the room, including lubricant and condoms on the bed." (Doc. 78 at 23.)

Plaintiff did not tell anyone at the No-Tel Motel that she was being trafficked or forced to engage in commercial sex on the premises. (Doc. 71 at 10.) Either Crystal or the customer rented the rooms, and money was exchanged inside behind closed doors. (*Id.*) Plaintiff testified that she dressed conservatively when visiting the No-Tel Motel to conceal what she was doing and to keep her boyfriend from learning about it. (*Id.*) She further explained that Crystal's sister or male friend often sat outside in the parking lot during sessions. (Doc. 78 at 23.) At times, Plaintiff sat outside in the parking lot if another person was using the room. (*Id.*)

Plaintiff's involvement in commercial sex ended in 2015 or 2016 after her boyfriend threatened Crystal that he would assault her if she continued to contact Plaintiff. (*Id.*)

### C. North Oracle Road's Reputation[6]

[6] In her Separate Statement of Facts, Plaintiff relies on four expert witnesses to assert that the area around the No-Tel Motel was well-known for "vice activity" (Doc. 78 at 18); "[t]here were frequent sting operations along the Miracle Mile, targeting prostitution and sex trafficking" (*Id.*); "motels in the Miracle Mile area facilitated commercial sex, both from street-based solicitation and online transactions facilitated by Backpage" (*Id.*); "[a]ny individual who had done reasonable diligence regarding the No-Tel Motel and surrounding areas would have been on notice of the high risk for vice activity, including sex trafficking, at the property" (*Id.* at 19); the Patels should have monitored online reviews (*Id.* at 20); "[m]ore than 75 percent of sex-trafficking cases involve use of hotels" (*Id.* at 25); hotel owners should be trained to identify red flags (*Id.*); "[h]otels that offer hourly rates make it easier for traffickers to operate and, thus, are at heightened risk of attracting and facilitating sex trafficking" (*Id.* at 26); "[a]t minimum, what was required under the circumstances was for Defendants to develop clear protocols for how to detect and respond to signs of prostitution and trafficking and then train staff to understand and act on these protocols" (*Id.*); "there are many complex factors that result in individuals being psychologically coerced into staying in trafficking situations" (*Id.* at 27); "[a] significant portion of women involved in commercial sex are victims of trafficking" (*Id.*); "the presence of commercial sex is the strongest risk factor for sex trafficking" (*Id.* at 28); hotel staff should be reporting "all commercial sex activity to avoid facilitating trafficking" (*Id.*); and "[h]otel practices that increase anonymity and reduce the risk of traceability make it

According to local news, beginning in the 1980s, North Oracle Road, formerly known as "North Miracle Mile Strip" developed a reputation for prostitution or other vice activity like illicit drugs. (Doc. 78-7 at 4; Doc. 78-17 at 1.)

The Patels claim they did not know about prostitution in the area during their ownership of the Tiki Motel and the No-Tel Motel. (Doc. 78 at 18–19.) They nevertheless admit they cooperated with a Tucson Police Department operation where police officers asked for a room at the Tiki Motel "and an undercover female officer lured people into the room then arrested them." (Doc. 71-1 at 77.) The Patels were told that the operation was part of a "neighborhood cleanup," and they cooperated because they had previously complained of "a lot of people suspiciously walking in the area." (*Id.*) The Patels did not describe this incident as having to do with prostitution or sex trafficking. (*Id.*)

Mrs. Patel also recalled that, prior to owning the No-Tel Motel, police were called "several times" to the Tiki Motel between 2003 and 2007. (Doc. 78-4 at 9.) She did not recall how many times, and she did not describe any of those incidents or connect them to prostitution or sex trafficking. (*Id.*) Likewise, Tucson Police Department records during the relevant period show 77 calls for service to the No-Tel Motel. (Doc. 78-15 at 1–2.) Plaintiff does not specify that any of these calls were for sex trafficking, but she asserts "[t]he volume and type of calls should have prompted a response from a motel owner to evaluate how its property is being used for illegal activity." (Doc. 78 at 20.)

Notwithstanding the Patels' denials, the evidence in the record is sufficient for a

---

easier for traffickers to operate" (*Id.*). Defendants filed separate Motions to Exclude each of these experts. (Docs. 66–69.) The Court will only consider exclusion to the extent Plaintiff relies upon the experts at summary judgment, which is more a limited analysis than the inadmissibility bases for Defendants' Motions to Exclude (i.e., reliability or relevance). For purposes of summary judgment, the Court will not consider any legal conclusions that Plaintiff relies upon from her experts. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004); *Cherewick v. State Farm Fire & Casualty*, 578 F. Supp. 3d 1136, 1166 n.17 (S.D. Cal. 2022) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426–27 (2007)) ("While the Court may consider expert opinions with respect to facts, it must ignore them with respect to the ultimate issues requiring a legal determination by the Court.").

reasonable jury to conclude the Patels had notice of prostitution in the area of the No-Tel Motel. Even this evidence, however, is insufficient to show the Patels had notice of *sex trafficking*.

**III. Standard of Review**

The Court grants summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(a), (c)). An issue is genuine when a reasonable jury could resolve the disputed facts in favor of either party. *See Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250–51 (1986)). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the non-movant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586–87. Likewise, the non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247–48. Moreover, the non-movant cannot defeat summary judgment based on expert opinions on legal conclusions. *Cherewick*, 578 F. Supp. 3d at 1166 n. 17. Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The Court's role at the summary judgment stage is to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249–50. "[T]here is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted); *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation.").

## IV. Analysis

For the following reasons, the Court will grant Defendants' Motion for Summary Judgment.

The TVPRA creates a civil remedy for victims of sex trafficking. 18 U.S.C. § 1595(a). The statute provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . .

*Id.* In other words, the TVPRA allows victims of sex trafficking to bring suit under both a perpetrator theory of liability and a beneficiary theory of liability. *See id.*

### A. Limiting Issues at Summary Judgment

The Amended Complaint alleged perpetrator liability (Claim I) and beneficiary liability (Claim II) against the Patels and Krushna LLC. (Doc. 22 at 21–23.) However, Plaintiff only addresses beneficiary liability in her Response to Defendants' Motion for Summary Judgment and offers no argument or evidence responsive to Defendants' challenge to perpetrator liability. (*See* Doc. 77.)

A party opposing summary judgment must identify facts and legal grounds showing a triable issue, but the Court need not construct arguments that the party has elected not to make. *See* Fed. R. Civ. P. 56; *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026,

1031 (9th Cir. 2001). "[W]here the non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived." *Lessin v. Ford Motor Co.*, 756 F. Supp. 3d 885, 907 (S.D. Cal. 2024) (quoting *Novalk, LLC v. Kinsale Ins. Co.*, 21-cv-01014-BEN-RBB, 2021 WL 4134741, at *2 (S.D. Cal. Sept. 10, 2021); *see also Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that "the plaintiffs did not raise that argument to the district court in their . . . opposition to the defendants' motion for summary judgment, so the argument was waived."); *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment."); *Panaccione v. Aldonex Inc.*, No. CV-19-04483-PHX-DLR, 2021 WL 268781, at *3 (D. Ariz. Jan. 27, 2021) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument.").

Because Plaintiff does not present any specific evidence or argument showing a triable issue exists as to perpetrator liability, the Court will grant summary judgment in favor of Defendants on Claim I.

Likewise, Plaintiff fails to respond to Defendants' argument that the TVPRA does not furnish a remedy for conduct predating the statute's effective date on December 19, 2003 or for conduct at the No-Tel Motel before the Patels acquired it in September 2007. (*See* Doc. 77.) Nor does she present argument supporting veil-piercing or other vicarious liability to hold the Patels responsible for Krushna LLC's conduct. (*Id.*) Indeed, Plaintiff states that she "does not seek to impose Krushna's liability on the Patels through veil-piercing. She seeks to hold the Patels personally liable for their own conduct, in addition to holding Krushna liable." (*Id.* at 16.)

Thus, Plaintiff only proceeds with argument that the Patels are individually liable for their conduct under a beneficiary theory of liability because they possessed constructive knowledge of her sex trafficking. (*Id.*) Accordingly, the Court limits its analysis to the Patels alleged knowledge as beneficiaries of conduct occurring at the No-Tel Motel after

the Patels purchased the property in September 2007.

**B. Beneficiary Theory of Liability Against the Patels**

On the remaining theory, Plaintiff fails to present evidence from which a reasonable jury could find that the Patels "[(1)] knowingly benefit[ted], or attempt[ed] or conspire[d] to benefit, financially or by receiving anything of value from [(2)] participation in a venture which [(3)] [they] knew or should have known has engaged in [sex trafficking]." 18 U.S.C. § 1595(a); *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022) ("*Ratha I*").

**1. Knowingly Benefitted**

There is a triable issue as to the first element. Under similar facts, other district courts have held that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet [the knowingly benefitted] element of the § 1595(a) standard." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 1:24-cv-00109-DAE, 2024 WL 4224915, at *3 (W.D. Tex. Aug. 30, 2024). Furthermore, Defendant does not specifically challenge the first element. (*See* Docs. 70, 88.)

**2. Participation in a Venture**

Defendants argue there is no evidence the Patels "participated in the ventures that allegedly trafficked Plaintiff at the [No-Tel] Motel." (Doc. 70 at 14.) They emphasize the Patels' alleged lack of involvement in managing the No-Tel Motel. (*Id.* at 15.) Plaintiff counters that it is sufficient that the Patels owned a motel business repeatedly used by traffickers like Crystal. (Doc. 77 at 7–8.) Plaintiff asserts the No-Tel Motel catered to this clientele by "creat[ing] and sustain[ing] an environment that enabled the commercial sexual exploitation of multiple women." (*Id.* at 8.)

Only one published Ninth Circuit case has defined "participation" for purposes of § 1595(a), holding that participation means "to take part." *Ratha v. Rubicon Res., LLC*, 168 F.4th 541, 560 (9th Cir. 2026) ("*Ratha II*"). However, *Ratha II* did not define "venture," and the Ninth Circuit has not specifically defined the phrase "participation in a venture" as it relates to § 1595(a). *See Doe DH v. Scottsdale Inns LLC, et al.*, No. CV-23-00759-PHX-

JJT, 2026 WL 1328170, at *4–*5 (D. Ariz. May 13, 2026) (discussing ways that other courts across the country have applied the standard). The Southern District of Ohio held that "participation in a venture" does not require actual knowledge that one is participating in sex trafficking. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019). Instead, that court found it sufficient to show "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *Id.* (concluding at the motion to dismiss stage that plaintiff's allegations that the hotel rented rooms to people it knew or should have known were engaged in trafficking was enough to plead participation); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023) (adopting the "continuous business relationship" standard). On the opposite end of the spectrum, the Eleventh Circuit has held that observing signs of trafficking is insufficient, *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021), and "[m]erely renting a hotel room to a trafficker with actual or constructive knowledge of his trafficking does not constitute 'participation in a venture[,]'" *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1269 (11th Cir. 2026). "[S]omething more than engaging in an ordinary buyer-seller transaction is required[.]" *Id.* (quoting *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024)). District courts in the Ninth Circuit have fallen on various points along the spectrum. *See Doe DH*, 2026 WL 1328170, at *5–*6 (collecting cases).

Given the absence of Ninth Circuit authority, the District of Arizona in *Doe DH* "decline[d] to apply any specific standard or definition of 'participation in a venture' and assume[d] only for purposes of resolving [summary judgment] that [the element of participation] is met . . . ." *Id.* at *6 (finding that, even assuming participation, plaintiff failed to meet the third element by showing defendant knew or should have known about the sex trafficking). This Court adopts the approach in *Doe DH* and will assume, without deciding, that Plaintiff has established a triable issue as to whether Defendants participated in a venture. As fully explained below, this approach is not dispositive because Plaintiff fails to show a triable issue as to the final element of a § 1595(a) claim.

**3. Knowledge of Sex Trafficking**

Defendants assert that Plaintiff fails to show the Patels were negligent because nothing would have alerted them that Plaintiff was being sex trafficked at the No-Tel Motel. (*See* Doc. 70 at 15.) Plaintiff argues that the Patels did not exercise "reasonable care, under the totality of the circumstances, to detect and respond to signs of possible sex trafficking." (Doc. 77 at 10.) She emphasizes the Patels had notice that sex trafficking happened in hotels and that the No-Tel Motel was at a "heightened risk" because it "was located on Oracle Road in Tucson's Miracle Mile corridor, an area notorious for prostitution and drug-related crime since at least the 1980s." (*Id.* at 11.) Plaintiff further asserts that the Patels had experience in the area given that they previously worked at the Motel Hacienda and contemporaneously owned the Tiki Motel. (*Id.*) She argues "[a]gainst that backdrop, Defendants' claim that they were unaware of commercial sex in the area is not credible." (*Id.*)

The TVPRA requires that the alleged beneficiary "knew or should have known" that the relevant venture engaged in sex trafficking. 18 U.S.C. § 1595(a). "[T]he phrase knew or should have known usually connotes negligence. And negligence is a less culpable mental state than actual knowledge or recklessness." *Doe DH*, 2026 WL 1328170, at *6 (quoting *Ratha I*, 35 F.4th at 1177). "[A] plaintiff may not rely solely on general allegations that a defendant was aware of sex trafficking to establish actual or constructive knowledge of specific instances of sex trafficking." *Id.* (quoting *Doe (S.B.C.) v. Six Continents Hotels, Inc.*, 800 F. Supp. 3d 1139, 1143 (W.D. Wash. Sept. 12, 2025)). "Rather, a plaintiff must plead facts establishing that a defendant knew or should have known that *the plaintiff* was being trafficked or regarding a specific trafficking enterprise." *Id.* (emphasis added) (quoting *Doe (S.B.C.)*, 800 F. Supp. 3d at 1143).

The TVPRA defines sex trafficking as commercial sex activity that involves a minor or that is carried out by "means of force, threats of force, fraud, coercion . . . or any combination of such means." 18 U.S.C. § 1591(a). The statute "does not address commercial sex activity generally." *Doe DH*, 2026 WL 1328170, at *6 (quoting *A.B. v.*

*Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021)). Thus, "it is not enough to establish a defendant's knowledge of general commercial sex taking place at its property . . . . A plaintiff must allege that defendants knew or should have known of a venture that involved sex trafficking by force, threat of force, [fraud,] or coercion." *Id.* (quoting *Christina T. v. Bellagio LLC*, 806 F. Supp. 3d 1185, 1195 (D. Nev. 2025)). The District of Nevada in *Christina T.* further explained that "[e]ven if defendants were aware plaintiff engaged in commercial sex work, plaintiff does not plausibly allege the defendants knew or should have known she was being trafficked by force or coercion." 806 F. Supp. 3d at 1195.

As an initial matter, Plaintiff repeatedly aggregates Krushna LLC, the Patels, the No-Tel Motel, and the No-Tel Motel staff. (*See* Docs. 77–78.) She fails to provide party-specific evidence, muddying the analysis of whether Defendant Krushna LLC and/or Defendants Mrs. and Mr. Patel had the requisite constructive knowledge. Furthermore, there appears to be no dispute that Krushna LLC did not purchase or own the No-Tel Motel. (*See* Docs. 71, 78.) Because Plaintiff fails to present evidence specific to the company, the Court finds that summary judgment is warranted as to Defendant Krushna LLC.

As to the Patels, Plaintiff has not met her burden of coming forth with specific facts to show a triable issue regarding their constructive knowledge that she was being sex trafficked at the No-Tel Motel. *See Matsushita*, 475 U.S. at 587. There is a factual dispute whether and to what extent the Patels observed activity at the No-Tel Motel. Plaintiff implies—without definitive evidence—that she saw at least Mr. Patel at the No-Tel Motel. But the Patels assert that, while they reviewed security camera footage, they were rarely physically present. This dispute is immaterial because, even assuming the Patels were regularly observing activity at the No-Tel Motel, Plaintiff has not presented evidence that they would have seen her engaged in behaviors that alerted them to *sex trafficking* as opposed to prostitution or commercial sex work.

The Court considers Plaintiff's proffered evidence in turn. First, the Court addresses North Oracle Road's reputation for crime. Plaintiff alleges that the Patels had experience

in the area because of their time at the Motel Hacienda and Tiki Motel. She further alleges that the Patels had notice of police operations targeting commercial sex work in the corridor. Plaintiff relies on news articles and experts opining that the area was well-known for commercial sex.

The Court notes that Defendants seek to exclude Plaintiff's expert opinions relating to this issue. However, even if the Court were to credit all the relevant opinions, the Patels' knowledge that the area was well-known for prostitution does not mean that they should have known about sex trafficking in general or, more importantly, that Plaintiff was being trafficked. Indeed, in her own briefing, Plaintiff argues that the Patels should have known about the "heightened risk" for sex trafficking specifically because the "area [was] notorious for *prostitution* and *drug-related crime* . . . ." (Doc. 77 at 11 (emphasis added).) Although Plaintiff argues that records show "a high volume of police activity at the No-Tel Motel[,]" she only establishes that, over a period of 7 years, the police received 77 call outs to the property, and she does not identify any of these reports as relating to sex trafficking. (*Id.* at 12.) Neither party asserts that the Patels or the No-Tel Motel were investigated for trafficking, and the Patels readily admit that they complained of people loitering in the area. Without more, Plaintiff has not offered specific evidence that the Patels should have known about sex trafficking due to prostitution and other general crime on North Oracle Road. *Brit. Airways Bd.*, 585 F.2d at 952 ("A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation.").

Second, Plaintiff has not presented specific indicia of her sex trafficking at the No-Tel Motel.[7] By her own admission, Plaintiff was an adult during the relevant period;[8] she

---

[7] The Court notes that Plaintiff does not distinguish factual allegations from the period before the Patels acquired the No-Tel Motel in 2007 from those arising afterward. (*See* Doc. 78.) Because the Court is required at summary judgment to view the factual allegations in the light most favorable to Plaintiff, it will assume, without deciding, that her experiences apply equally to the period after 2007 as to the period before it.

[8] Although Plaintiff emphasizes that Crystal was also trafficking a 13-year-old girl at the No-Tel Motel, Plaintiff does not specify when this occurred or when the Patels would have

never told anyone at the No-Tel Motel she was being trafficked; she only ever rented a single room for a day or less; she freely arrived at and left the property without incident; she exchanged money with her customers behind closed doors; and she dressed conservatively so as not to attract attention. At best, Plaintiff alleges that she and Crystal used prepaid debit cards to rent rooms; Crystal's sister or male friend sometimes sat in the parking lot; Plaintiff was often high; she requested extra towels; the rooms had mirrors on the ceilings and offered pornographic channels; and condoms and lubricant often remained in the room when staff came to clean. These facts, taken as true, do not establish that the Patels knew or should have known that Plaintiff was being sex trafficked at the No-Tel Motel during the relevant period.

To be clear, this Court does not hold that a victim of sex trafficking is required to report her abuse to hotel staff. Nonetheless, even viewing all these allegations in the light most favorable to Plaintiff, the only reasonable inference they establish is that Plaintiff was engaged in commercial sex activity, not that she was being forced or coerced even through non-physical means. This is not sufficient to support a claim under the TVPRA.

Finally, Plaintiff focuses heavily on the Patels' failure to train their staff to identify potential sex trafficking and on other lax anti-trafficking measures at the No-Tel Motel. She asserts that the Patels "did nothing to train staff to implement policies for identifying, documenting, or reporting signs of commercial sex. Mr. Patel's only instruction on security was to call police if staff saw something suspicious." (Doc. 77 at 13–14.) Plaintiff further argues that hotels are often used by traffickers and commercial sex is one of the biggest indicators for sex trafficking. (*Id.* at 13–15.) "At a minimum," Plaintiff asserts, "the record raises a jury question on whether Defendants should be charged with constructive knowledge based on their failure to exercise reasonable diligence considering the heightened risk of sex trafficking at their property." (*Id.* at 13.)

"[G]eneral knowledge of commercial sex activity occurring at hotels across the United States is insufficient . . . ." *A.B.*, 532 F. Supp. 3d at 1026. Moreover, "the TVPRA

---

observed the minor.

does not impose an affirmative duty to police and prevent sex trafficking." *Id.* at 1027; *B.M. v. Wyndham Hotels & Resorts, Inc.*, Case No. 20-cv-00656-BLF, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020) ("To be clear, the Court does not read section 1595 of TVPRA [as] requiring hotels or their franchisors to affirmatively stop sex trafficking."). Thus, the relevant question is not whether the Patels could have reasonably implemented preventative measures including comprehensive training to their staff about identifying and reporting potential sex trafficking. Instead, the question at issue is whether a reasonable jury could conclude that the Patels should have known that Plaintiff was being forced or coerced into participating in commercial sex work at the No-Tel Motel. The Court finds that it could not. Accordingly, the Court will grant Defendants' Motion for Summary Judgment.

**V. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 70.) The Clerk of Court shall docket accordingly, enter judgment in favor of Defendants, and close this case.

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude Plaintiff's Expert Noel Busch-Armendariz, PhD, LMSW, MPA (Doc. 66), Motion to Exclude Plaintiff's Expert Rochelle Keyhan (Doc. 67), Motion to Exclude Salvatore Caccavale (Doc. 68), and Motion to Exclude Heidi Chance (Doc. 69) are **DENIED AS MOOT**.

Dated this 22nd day of September, 2026.

Honorable Angela M. Martinez
United States District Judge